UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NNETE MATIMA,

Plaintiff,

-v-

BYTEDANCE INC, ALLEN ADJAMIAN, *and* AHMAD FAYAD,

Defendants.

25 Civ. 10213 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves motions to compel arbitration. Plaintiff Nnete Matima sues her former employer ByteDance, Inc. ("ByteDance"), and two of her supervisors there, Allen Adjamian and Ahmad Fayad. She claims race and gender discrimination, including sexual harassment and retaliation, in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL").

Each defendant moves to compel arbitration, based on an arbitration agreement Matima executed at the start of her employment. Matima counters that the agreement is unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA"), 9 U.S.C. §§ 401–02.

For the reasons that follow, the Court denies the motions to compel arbitration.

## I. Background[1]

### A. The Parties

Matima is a resident of Columbia County, New York. Dkt. 17 (the "FAC") ¶ 7. Between July 25, 2022, and August 11, 2023, she was employed by ByteDance as a business development (sales) representative ("BDR"). *Id.* ¶¶ 14, 39, 72. She is a Black woman who graduated *magna cum laude* from Fordham University and from the University of Massachusetts Law School. *Id.* ¶ 38.

ByteDance is incorporated in Delaware, Dkt. 1 at 4, and has its principal place of business in Culver City, California. *Id.* ¶ 8. A technology company, it is the parent company of TikTok Ltd. ("Tiktok"), a wholly owned subsidiary incorporated in the Cayman Islands. *Id.*

Adjamian is a resident of California. *Id.* ¶ 9. Between July 25, 2022, and the end of 2022, he was Matima's supervisor at ByteDance. *Id.* ¶¶ 14, 28, 31, 39, 42. He was the company's vice president of sales, *id.* ¶ 19, and later global head of sales, *id.* ¶ 49. Around May 2023, he was terminated. *Id.* ¶ 67.

---

[1] The following account of Matima's factual allegations is drawn from her First Amended Complaint. *See* Dkt. 17 (the "FAC"). For the purposes of resolving the motions to dismiss—and to the extent that the Court's application of the EFAA requires determining whether the FAC states a plausible claim of sexual harassment—the Court accepts as true the FAC's well-pled factual allegations and draws all reasonable inferences in Matima's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

In evaluating motions to compel arbitration, courts in this Circuit apply a standard akin to that governing motions for summary judgment, *see Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 49 (2d Cir. 2022), and, in determining whether a dispute falls within an arbitral agreement's scope, consider all relevant evidence and draw reasonable inferences in favor of the non-moving party, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). Here, there are no disputes of fact relating to the agreement. Its content, date, and validity are undisputed. *See* Dkts. 11-1, 22, 30, 31.

Fayad is a resident of California. *Id.* ¶ 10. Between the end of 2022 and June 2023, Fayad was Matima's supervisor. *Id.* at ¶¶ 28, 67–68. In June 2023, he was terminated. *Id.* ¶ 67.

### B. Events Through Matima's Termination

#### 1. Matima's Responsibilities at ByteDance

On July 25, 2022, Matima began working as a BDR in ByteDance's "Lark" Division, an enterprise collaboration and productivity platform. *Id.* ¶¶ 14, 39. Her primary duties involved selling Lark to other businesses. *Id.* ¶¶ 15–16. Matima "was regularly a top performing BDR in terms of daily sales metrics." *Id.* ¶ 27.

#### 2. Matima's Arbitration Agreement

On July 5, 2022, in connection with her offer of employment, Matima electronically executed an arbitration agreement with ByteDance. Dkt. 11-1 ("Arbitration Agreement") at 3. She agreed to arbitrate all "disputes arising out of or relating to the . . . employment relationship, or the termination of that relationship (including post-employment defamation or retaliation), . . . retaliation, discrimination, or harassment." *Id.* at 4. The agreement covered "any dispute, past, present, or future" against ByteDance and its officers. *Id.*

#### 3. Matima Experiences Race Discrimination and Makes Internal Complaints

For much of her employment, Matima was the only Black BDR on ByteDance's 40-person North America sales team. FAC ¶ 43. The FAC alleges that, from the time she was hired, Adjamian treated her "differently (and worse) than her predominantly white BDR comparators." *Id.* ¶ 41. Adjamian required her to start sales outreach immediately, whereas her white colleagues were given time to complete mandatory training. *Id.* Adjamian allocated 75% of the team's sales goals to Matima, whereas her three non-Black colleagues together were responsible for 25% of these goals. *Id.* ¶ 42. Adjamian and Fayad also spoke about Matima in a

"disrespectful and patronizing manner." *Id.* ¶ 43. On January 5, 2023, account executive Hannah Wells told Matima that Adjamian and Fayad "routinely referr[ed] to Ms. Matima as 'Black Snake.'" *Id.* ¶ 54. Wells also told Matima that Fayad had used a racial slur to describe Matima. *Id.* ¶ 56. A BDR leaving ByteDance told Wells that Matima's colleague, Dana Azadegan, regularly used "that hateful term to refer to" Matima and Wells. *Id.*

*a. Matima's Written Complaints*

Between August 12, 2022[2] and February 23, 2023, Matima filed three internal complaints with ByteDance, alleging race discrimination and, more generally, a "hostile work environment." *Id.* ¶¶ 29, 32, 44, 62, 69; Dkt. 31-3.[3]

i. Complaint #1

On August 12, 2022, one week after Adjamian sent Matima her sales goals, she filed her first internal complaint, Complaint #1. FAC ¶ 44; Dkt. 31-3 ("Compl. #1") at 4. It states:

> I am experiencing problems with my manager (Allen Adjamian, VP of Sales) and I've barely started here. I am very troubled by the way I am being treated and spoken to. I am being treated differently from my colleagues (and they have noticed as well). The issues: I have not been allowed to complete my trainings while others have been given time to focus on that. I am having to train the new hires when I myself have been deprived of training. I am not given the same considerations as others. I am having piles of tasks thrown at me with no instruction. I am having unreasonable expectations placed on me that others are not. I am being spoken to disrespectfully. I am being treated like a second-class citizen and being patronized constantly and don't feel that is right or fair. I want to speak up immediately because it has created a hostile work environment and it is escalating. I am afraid

[2] The FAC states that the first internal complaint was filed on August 11, 2022, but a screenshot of the complaint, Dkt. 31-3 ("Compl. #1") at 4, shows that it was filed the following day.

[3] The FAC references these internal complaints. *See, e.g.*, FAC ¶¶ 44, 62, 69. They are thus cognizable on the pending motions, which turn on whether the FAC states a plausible claim. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (in evaluating a motion for failure to state a claim, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint"). The complaints are exhibits to the declaration of Ashley Zangara, filed by the defense. *See* Dkt. 31-3, Exhs. A–C.

> that if these things are not addressed promptly, it will ruin my experience with the organization. I came here to learn, further my career, and produce great results - not to be treated like I'm lesser than. I am shocked that Allen is treating me this way and I am very upset. Again, I am shocked that he has chosen to take this negative approach with me as I am so new and have barely gotten my footing here. I have already scheduled 2 meetings, with no training, no support. It is clear that despite that, I am not appreciated and I fear I am being set up for failure instead of being treated with consideration and being empowered by Allen. This is all very disappointing and stressful.

*Id.*

In response, ByteDance's ethics office, which handled race discrimination complaints, initiated an investigation. FAC ¶ 45. On August 25, 2022, Andy Wang, the Lark Division's general manager, told Matima that Adjamian wanted to promote her; the promotion, however, never occurred, and Matima alleges that the promise of a promotion was an attempt to deflect her grievances. *Id.* ¶ 46. At the end of August 2022, Wang told Matima that three departments within ByteDance had approached him about having Matima transferred to work for them, but that he had declined their invitations; he did not identify these departments for her. *Id.* ¶ 47. On October 4, 2022, the ethics office made a finding of no wrongdoing and closed its investigation. *Id.* ¶ 48. Around that time, Adjamian was promoted to global head of sales. *Id.* ¶ 49.

In October 2022, Adjamian "began engaging in retaliatory acts" against Matima. *Id.* ¶ 50. Late that month, he reassigned hundreds of low-quality leads to Matima from a non-Black employee, Imberly Collantes, who had been "struggling to generate leads." *Id.* ¶ 51. In mid-November, he refused to give Matima a quarterly bonus even though, based on her sales results, she had earned it. *Id.* ¶ 52.

In January 2023, Fayad "personally approved" Matima's request for sick leave but then pretended he had not, and "ordered her to fly to San Jose" to attend a meeting even though she was ill. *Id.* ¶ 57. After Matima attended the meeting virtually, Fayad reported her to HR. *Id.* ¶ 57. That month, Fayad "berated" Matima for missing work on days she had been told she

could take off, gave a white employee leads Matima had developed, and, with Adjamian, made false allegations that Matima had "dropped the ball" by not contacting a potential client. *Id.* ¶ 58. Also that month, Adjamian and Fayad "began excluding" Matima from meetings and did not inform her of a conference until the last minute. *Id.* ¶ 59.

ii. Complaint #2

On February 23, 2023, Matima filed Complaint #2, a five-page, single-spaced "ethics complaint." *Id.* ¶ 62; Dkt. 31-3 ("Compl. #2") at 6–10. It alleged retaliation against Matima for filing Complaint #1. Compl. #2 at 6. It begins by noting that her supervisors knew about Complaint #1.[4] *Id.* The balance of Complaint #2 recounts the alleged retaliation, including a "public smear campaign" against Matima. *Id.* at 7–10. It alleges a "hostile work environment," *id.*, accuses Adjamian of "harassment," describes a culture of racial discrimination, states that Matima had been "compelled to speak up" because ByteDance does not "celebrate[] diversity [nor] ensure[] a healthy and positive work environment for ALL," and reports that Adjamian and Fayad had referred to her as "Black Snake," a "racial slur [that] makes the rest of the team very uncomfortable." *Id.* at 6–8. It concludes: "I have experienced my direct leaders (Ahmad, Allen) smear my name, reputation and completely misrepresent facts and fabricate negative narratives regarding me." *Id.* at 10.

In retaliation for Complaint #2, Fayad scheduled a recurring two-hour weekly call after East Coast work hours which Matima was required to attend, instructed her to take paid time off if she did not want to join these calls, told Matima's teammates that she refused to join the calls even though she had been able to join some of them, and gave her leads to a white colleague.

[4] Complaint #2 states that Adamian had been notified of Complaint #1 by "leadership and Ethics" and that she had informed Fayad of it. *Id.* at 6.

FAC ¶ 63. On April 18, 2023, Matima received a negative performance review that resulted from a "material deviation" from the "normal review process," contained "false and unfair criticisms," and ignored her "strong performance." *Id.* ¶ 65. In June 2023, ByteDance investigators told Matima they had been unable to substantiate her allegations of retaliation. *Id.* ¶ 67.

iii. Complaint #3

On June 13, 2023, Matima sent a letter, Complaint #3, to HR. *Id.* ¶ 69; Dkt. 31-3 ("Compl. #3) at 12–13. It stated that Adjamian and Fayad had discredited her work, engaged in "hostile racist, and retaliatory treatment" toward her, and created an "escalating hostile work environment." Compl. #3 at 12–13. She wrote: "ByteDance has intentionally, deliberately, recklessly, and egregiously violated my constitutional (Title VII) rights." *Id.* at 13.

**4. Matima's Termination**

On June 26, 2023, Matima was removed from her team's rotation and denied new sales leads. FAC ¶ 70. On July 3, 2023, she was excluded from the BDR Dashboard. *Id.* ¶ 71. On August 11, 2023, she was informed that she was terminated, effective immediately. *Id.* ¶ 72.

**C. Matima's EEOC Charge**

On September 20, 2023, Matima filed a charge of discrimination with the New York district office of the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 121; Dkt. 12-1 (the "Charge") at 1–18. The Charge claims discrimination, retaliation, and a hostile work environment, in violation of the NYSHRL, the NYCHRL, and Title VII of the Civil Rights Act of 1964. *Id.* It describes ways in which Matima "was treated differently and worse than her BDR colleagues." *Id.* at 5.

On July 24, 2025, the EEOC terminated its processing of the Charge and issued a notice of Matima's right to sue. FAC ¶ 121.

### D. Matima's New York State Court Action

#### 1. Matima's Initial Summons

On October 10, 2025, Matima initiated this action against ByteDance by filing a summons with notice in New York State Supreme Court in Manhattan. Dkt. 1-3 at 2–3 (the "Summons"). It stated that Matima was bringing claims, under the NYSHRL and the NYCHRL, of "sexual harassment, hostile work environment and disparate treatment gender discrimination, hostile work environment and disparate treatment race discrimination, and retaliatory termination." *Id.* at 2. It stated that Matima sought "money damages, injunctive and declaratory relief." *Id.* at 3.

#### 2. Matima's Amended Summons

On October 29, 2025, Matima filed an amended summons, which made one change to the Summons, changing the defendant's name from "Bytedance Ltd. (d/b/a TikTok)" to "ByteDance, Inc. (d/b/a TikTok)." Dkt. 1-3 at 5–7 ("Amended Summons"). On November 10, 2025, the Amended Summons was served on ByteDance. Dkt. 1 ("Notice of Removal") at 2.

### E. ByteDance's Removal and Motion to Compel Arbitration

On December 9, 2025, ByteDance removed the case to this Court, based on diversity jurisdiction. Notice of Removal at 2–5.

On December 16, 2025, ByteDance moved to compel arbitration, citing the arbitration agreement Matima had signed, and moved for a stay of this case pending arbitration, citing the Federal Arbitration Act, 9 U.S.C.A. § 1 *et seq.* ("FAA"). Dkts. 9–10. Anticipating opposition by Matima, it argued she could not use the EFAA to block arbitration because she had not pled

any claim within the scope of the EFAA. Dkt. 10 at 8–10.

On December 24, 2025, the Court, recognizing that Matima's Summons, consistent with state-court practice, had identified but not pled the factual basis for her claims, *see* New York Civil Practice Law and Rules § 305(b), gave Matima until January 14, 2026, to file an amended complaint consistent with federal pleading standards, which would enable the Court to evaluate the plausibility of her claims. Dkt. 15.

**F. Matima's FAC and Its Factual Allegations**

On January 15, 2026, Matima filed the FAC. Dkt. 17 (the "FAC"). Like the Summons, it brought sexual harassment, race discrimination, and retaliation claims. *Id.* ¶¶ 76–127. The sexual harassment claims named ByteDance and Adjamian, under the NYSHRL and NYCHRL. *Id.* ¶¶ 76–93. The race discrimination and retaliation claims named ByteDance and Fayad, under the NYSHRL, NYCHRL, and Title VII. *Id.* ¶¶ 94–127.

Relevant here, the FAC factually expanded upon Matima's sexual harassment claims, which pursued hostile work environment, and *quid pro quo*, theories of liability. *Id.* ¶¶ 18–27. The facts span two distinct periods and supervisors. *Id.* ¶¶ 18–35.

***August through November 2022*** **(Adjamian)**: In August 2022, Matima and Adjamian were off site at ByteDance's California headquarters. *Id.* ¶¶ 19–25. On August 22, Adjamian "spent the whole day ogling Ms. Matima, who was wearing a dress, and he glared at her legs and backside." *Id.* ¶ 20. At lunch, he "waved" her over to sit next to him, making her feel "required to sit with him," even though she "did not want to do so." *Id.* When she began eating, he leaned in and whispered, "Do you always wear dress? I bet your boyfriend likes you in dresses. Do you have one?" *Id.* ¶ 21. Matima did not respond. *Id.*

The next day,[5] Adjamian knocked on Matima's hotel room door around midnight. *Id.* ¶ 22. She did not open the door, but heard his voice in the hallway. *Id.* Around 3 a.m., the front desk woke Matima, saying it had received a complaint about loud music in her room. *Id.* ¶ 23. It did not say who had made the complaint. *Id.* The next morning, Adjamian stood over Matima's desk, leaned in, and asked, "How did you sleep last night? You should have let me in." *Id.* ¶ 24.

In late October 2022,[6] Adjamian called Matima on her personal phone and told her he was assigning her as the sole BDR responsible for attending the Diversity, Equity, and Inclusion in Technology Conference (the "DEI Conference"). *Id.* ¶ 26. Matima expressed concern about losing time to close sales leads. *Id.* Adjamian responded, "If you are worried about that, we can make other arrangements, like I do with the other girls. Stop being such a prude! Can't you see, your life would be so much easier if you would give me what I want?" *Id.*

On November 28, 2022, Adjamian called Matima after work hours and said he was aware that she had been approved for a transfer to another position at ByteDance and that she "better keep your performance up, and stop playing hard to get or else I will have to give you a bad report [to the next hiring manager]." *Id.* ¶ 27.

**Late 2022 and 2023 (Fayad):** At the end of 2022, Fayad succeeded Adjamian as Matima's supervisor. *Id.* ¶ 28. The FAC alleges that "[u]pon information and belief," Fayad was friends with Adjamian and "knew about Adjamian's sexual harassment of Ms. Matima." *Id.*

---

[5] The FAC states that this event took place on "August 23, 2023," but the year appears to be in error. *Id.* ¶ 22. By August 23, 2023, Matima was no longer employed at ByteDance. *Id.* ¶ 72.

[6] The FAC situates this conversation in "the company's fourth quarter of 2022"; the Charge, cognizable on this motion, specifies that it occurred in "late October 2022." *Compare* FAC ¶¶ 26 *with* Charge at 6.

At the beginning of 2023, Fayad told Matima he knew she wanted to transfer and that, if hiring managers contacted him, he "wouldn't tell them good things about [her]." *Id.* ¶ 29. Fayad made that threat to punish Matima for refusing Adjamian's sexual advances. *Id.*

On or about January 14, 2023, Fayad "initiated a barrage of phone calls" to Matima, who was attending a conference. *Id.* ¶ 30. Matima asked why he was calling, but he "was unable to provide any work-related reasons." *Id.* He also called Matima's co-workers, asking about her location and activities. *Id.* He asked Matima to connect with him on LinkedIn, a social-media site, and "demanded" that she "like" and "comment" on his posts. *Id.* He stated that her doing so was necessary for him so that he could send her sales leads on LinkedIn, but he never sent her any such leads and later denied this discussion. *Id.* Fayad "constantly demanded [her] presence, after work hours" and, on Monday mornings, "would demand to know what she had been doing over the weekend and who she had been spending time with during her weekend, off duty hours." *Id.*

On February 21, 2023, Matima saw that her internal approval to transfer had "suddenly and mysteriously" been revoked. *Id.* ¶ 31. Confronted about this, Fayad "falsely claimed that he was unaware that [she] was applying for internal transfers" and "stated definitively that he did not intend to approve of any transfer request" by her. *Id.*

On February 23, 2023, Matima filed "Complaint #2," which the FAC characterizes as expressing "concern for [Matima's] safety due to the ongoing sexual harassment and retaliation," and asked that HR or a third party attend her one-on-one meetings with her supervisors. *Id.* ¶ 32. HR ignored this complaint, and Fayad canceled all one-on-one meetings with Matima, deleted the records of their communications, and locked her out of the system where those records were maintained. *Id.*

Between December 2022 and June 2023,[7] Fayad "frequently" called Matima during and after work on her personal phone number. *Id.* ¶ 33. She also received calls from a blocked number, whose caller made heavy breathing and moaning noises. *Id.* Matima suspected these calls came from Fayad. *Id.*[8]

### G. The Renewed Motions to Compel Arbitration

On January 30, 2025, ByteDance filed a letter stating that it would rely on its earlier motion to compel arbitration. Dkt. 21. On February 13, 2026, Matima opposed that motion. Dkt. 22 ("Opposition"). On February 20, 2026, ByteDance filed a reply. Dkt. 23 ("Reply"). On April 27, 2026, both individual defendants moved, alternatively, to compel arbitration or to dismiss claims under Federal Rule of Civil Procedure 12(b)(6), with Adjamian moving to dismiss the sexual harassment claims against him, Dkt. 30-1 ("Adjamian Mem."), and Fayad moving to dismiss the retaliation claims against him to the extent these claimed retaliation for a report by Matima of sexual harassment. Dkt. 31-1 ("Fayad Mem.").[9]

---

[7] The FAC states that Fayad called Matima "[f]rom December 2023 through June 2023." *Id.* ¶ 33. The first date appears again to refer to December 2022, as, by December 2023, Matima was no longer employed at ByteDance. *Id.* ¶ 72.

[8] At unspecified times during the "period of continuing harassment and retaliation," the FAC alleges that Adjamian attempted to contact Matima on social media. *Id.* ¶ 34. Matima blocked Adjamian, but he created new accounts to "engage in surveillance" of her. *Id.*

[9] On May 11, 2026, the Court suspended the deadline for Matima to respond to the individual defendants' motions to dismiss, pending resolution of the motions to compel arbitration. Dkt. 44. The Court deferred until then the resolution of motions to withdraw that Matima's counsel had recently filed. *See* Dkts. 38–42.

## II. Arbitrability of Matima's Claims

The Court first resolves the motions to compel arbitration. That is because, where the arbitration clause is valid, any motion to dismiss would be for the arbitrator to resolve. *Brazzano v. Thompson Hine LLP*, No. 24 Civ. 1420, 2025 WL 963114, at *4 (S.D.N.Y. Mar. 31, 2025).

Defendants move to compel arbitration of all claims. Matima counters that under the EFAA, the FAC's sexual harassment claims override the arbitration agreement and require that this case be resolved in court. For the reasons that follow, she is correct. And, under the EFAA, that requires denial of the motions to compel arbitration with respect to all claims in the FAC.

### A. Applicable Legal Standards

#### 1. The Impact of the EFAA on Arbitration Agreements

The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 625 (1985) (internal citation omitted). It provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It establishes that for contractual issues being adjudicated under federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The statute was enacted to reverse "centuries of judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510–11 (1974) (internal quotations and citation omitted).

Were it not for the EFAA, there would be no dispute that Matima's claims must be resolved in arbitration. The FAC's claims are all covered by the Arbitration Agreement, under

which Matima agreed to arbitrate all "disputes arising out of or relating to" her "employment relationship" or its termination, including claims of "retaliation, discrimination, or harassment." Arbitration Agreement at 4. And Matima does not claim that the agreement was invalid or unconscionable. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

The EFAA, however, amends the FAA. It provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The EFAA applies to claims that accrued on or after March 3, 2022, the day President Biden signed the EFAA into law. *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022); *see, e.g.*, *Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022); *Johnson v. Everyrealm*, 657 F. Supp. 3d 535, 550 (S.D.N.Y. 2023) (Engelmayer, J.); *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 85 (2d Cir. 2024).

The EFAA defines a "sexual harassment dispute" as any "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). It provides that its application "shall be determined by a court, rather than an arbitrator," under federal law, "irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing [the] agreement," or "whether the agreement purports to delegate such determinations to an arbitrator." *Id.* § 402(b).

As a matter of statutory construction, when a court determines that the EFAA applies, the arbitration agreement is unenforceable as to all claims brought by the plaintiff, not merely those alleging conduct constituting sexual harassment (or assault). *See Johnson*, 657 F. Supp. 3d at

558–61 ("[T]he text of § 402 makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute."). *Johnson* has been widely followed, including in the federal courts of appeals, *see, e.g., Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 381–85 (6th Cir. 2026); *Ding v. Structure Therapeutics, Inc.*, No. 25-1532, 2026 WL 2420555, at *7 (9th Cir. August 19, 2026), and by district courts in this Circuit, *see, e.g., Delo v. Paul Taylor Dance Foundation, Inc.*, 685 F. Supp. 3d 173, 180–181, 185 (S.D.N.Y. 2023); *Mitura v. Finco Servs.*, Inc., 712 F. Supp. 3d 442, 451 (S.D.N.Y. 2024), *reconsideration denied*, No. 23 Civ. 2879, 2024 WL 1160643 (S.D.N.Y. Mar. 18, 2024); *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024); *Newton v. LVMH Moët Hennessy Louis Vuitton Inc.*, 746 F. Supp. 3d 135, 150 (S.D.N.Y. 2024), *vacated in part on other grounds*, 2025 WL 1826583 (S.D.N.Y. July 2, 2025); *Zeng v. Ellenoff Grossman & Schole LLP*, No. 23 Civ. 10348, 2024 WL 4451605, at *7 (S.D.N.Y. Apr. 10, 2024); *Puris v. TikTok Inc.*, No. 24 Civ. 944, 2025 WL 343905, at *6 (S.D.N.Y. Jan. 30, 2025). The Court is unaware of contrary federal-court authority.[10]

Critically, however, to trigger the EFAA, a party's claim alleging conduct constituting a sexual harassment (or assault) dispute must be plausibly pled, within the meaning of Federal Rule of Civil Procedure 12(b)(6), as construed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

[10] In *Mera v. SA Hospitality Group LLC*, Magistrate Judge Aaron concluded that, although the EFAA overrode the arbitration agreement as to the plaintiff's hostile work environment claims, the plaintiff could be compelled to arbitrate his wage and hour claims. 675 F. Supp. 3d 442, 447–48 (S.D.N.Y. 2023). Judge Gardephe, however, later rejected that aspect of Judge Aaron's Report and Recommendation as "clearly erroneous and contrary to law," because where "the EFAA is properly invoked and applies, a pre-dispute arbitration agreement is invalid and unenforceable as to the plaintiff's entire case." *Mera v. SA Hospitality Group, LLC*, No. 23 Civ. 3492, 2025 WL 3202080, at *10 (S.D.N.Y. Nov. 17, 2025).

570 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and other cases. This Court construed the EFAA to so require in *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 583–88 (S.D.N.Y. 2023) (Engelmayer, J.), the companion case to *Johnson*. *Yost*, too, has been widely followed by district courts in this Circuit, *see, e.g.*, *Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 253 (S.D.N.Y. 2024); *Delo*, 685 F. Supp. at 180–82; *Smith v. Meta Platforms*, No. 24 Civ. 4633, 2025 WL 2782484, at *6–11 (S.D.N.Y. 2025); *Toomey v. One Equity Partners*, No. 24 Civ. 4088, 2026 WL 458244, at *4 (S.D.N.Y. Feb. 18, 2026); *Lane v. Salesforce, Inc.*, No. 25 Civ. 9707, 2026 WL 2364630, at *4 (S.D.N.Y. Aug. 14, 2026).[11] The Court is unaware of contrary circuit authority, and the one circuit court to survey the issue termed *Yost* the "prevailing view of federal district courts that have analyzed the EFAA." *Bruce*, 168 F.4th at 375. Therefore, a complaint that does not plausibly allege a sexual harassment (or assault) claim does not trigger the EFAA or override a valid arbitration agreement. *See, e.g.*, *Singh*, 750 F. Supp. 3d at 257–59 (granting motion to compel arbitration, and finding EFAA not applicable, where sexual harassment claim was implausibly pled); *Smith*, 2025 WL 2782484, at *11 (same); *Lane*, 2026 WL 2364630, at *4–8, 11 (same); *Yost*, 657 F. Supp. 3d at 588, 591 (same).

### 2. Standards for Sexual Harassment Claims Under the NYCHRL

The FAC's sexual harassment claims are brought under the NYSHRL and the NYCHRL. In determining whether either is plausibly pled so as to trigger the EFAA, the Court's focus is on the NYCHRL, because its liability standards are lower than or equal to the NYSHRL's, such that a claim that is not viable under the NYCHRL is necessarily not viable under the NYSHRL.[12]

---

[11] Judge Liman has parted ways with *Yost*, holding that the EFAA requires only that the claim has been non-frivolously pled. *Diaz-Roa*, 757 F. Supp. 3d at 541–43 (S.D.N.Y. 2024).

[12] Historically, the NYSHRL's standards were keyed to Title VII, which, as to sexual harassment, required establishing "severe and pervasive" conduct. *Mondelo v. Quinn, Emanuel,*

Although the FAC claims that Matima was subjected to "both hostile work environment sexual harassment and quid pro quo sexual harassment," FAC ¶ 89, the NYCHRL "does not distinguish *quid pro quo* claims from hostile work environment ones." *Frederick v. Passfeed, Inc.*, No. 21 Civ. 2066, 2022 WL 992798, at *7 (S.D.N.Y. Mar. 31, 2022) (internal citation omitted). Rather, to state a sexual harassment claim under the NYCHRL, a complaint must allege facts showing that the plaintiff "was subjected to 'unwanted gender-based conduct.'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020) (Engelmayer, J.) (quoting *Erasmus v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 1398, 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015)); *see also Girardi v. Ferrari Express, Inc.*, No. 20 Civ. 4298,

---

*Urquhart & Sullivan, LLP*, No. 21 Civ. 02512, 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022). The NYCHRL does not require such a showing. *See Moazzaz v. MetLife, Inc*, No. 19 Civ. 10531, 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021); *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S. 2d 27, 41 (1st Dept. 2009); *Cadet v. Macy's, Inc.*, No. 22 Civ. 7406, 2026 WL 1998595, at *9 (S.D.N.Y. July 10, 2026).

A 2019 amendment to the NYSHRL, however, codified a more lenient standard of liability, which eliminated the "severe and pervasive" requirement. *Williams*, 872 N.Y.S. 2d at 73–74. The case law has not definitively resolved whether the 2019 amendment made the NYSHRL's standard identical to that of the NYCHRL—or merely closer to it. *Compare Arazi v. Cohen Bros. Realty Corp.*, No. 20 Civ. 8837, 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for the NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."), *with Eckhart v. Fox News Network, LLC*, No. 20 Civ. 5593, 2021 WL 4124616, at *19 (S.D.N.Y. Sep. 9, 2021), *on reconsideration in part*, No. 20 Civ. 5593, 2022 WL 457121 (S.D.N.Y. Sep. 29, 2022) ("Pursuant to Title VII and the NYSHRL, to state a claim of discrimination through the creation of a hostile work environment, a plaintiff must plausibly allege that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive.'") (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015)); *Diaz-Roa*, 757 F. Supp. 3d at 554 (S.D.N.Y. 2024) ("For Plaintiff's NYSHRL claim to survive, she must plead that she was subjected to 'inferior terms, conditions or privileges of employment because of the individual's membership in one or more . . . protected categories.' Meanwhile, under the NYCHRL, Plaintiff must plead that she was 'treated less well than other employees because of her gender.'" (quoting *Mitura*, 712 F. Supp. 3d at 453)).

2023 WL 2744027, at *5 (S.D.N.Y. Mar. 31, 2022); *Cano v. SEIU Loc. 32BJ*, No. 19 Civ. 8810, 2021 WL 4480274, at *11 (S.D.N.Y. Sep. 30, 2021). Courts also examine whether the conduct or remarks at issue had "the sexualized content" characteristic of sexual harassment. *Montanus v. Columbia Management Investment Advisers, LLC*, No. 25 Civ. 2798 (PAE), 2025 WL 2503326, at *7 (S.D.N.Y. Sep. 2, 2025).

Ultimately, a plaintiff "need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *McHenry*, 510 F. Supp. 3d at 66 (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). Courts are to "construe [the NYCHRL] . . . broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Caravantes v. 53rd St. Partners, LLC*, No. 9 Civ. 7821, 2012 WL 3631276, at *13 (S.D.N.Y. Aug. 23, 2012) (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (N.Y. 2011)); *Mihalik*, 715 F.3d at 109.

At the same time, "district courts must be mindful that the NYCHRL is not a general civility code." *McHenry*, 510 F. Supp. 3d at 66 (quoting *Williams*, 872 N.Y.S. at 40). It does not apply to conduct that "a reasonable victim would consider petty slights and trivial inconveniences." *Williams v. NY.C. Housing Auth.*, 61 F. 4th 55, 69 (2d Cir. 2023) (internal citation omitted).

**B. Plausibility of the FAC's Sexual Harassment Claim Under the NYCHRL**

**1. Scope of Cognizable Conduct**

In analyzing whether the FAC pleads a plausible sexual harassment claim under the NYCHRL, the Court first considers the time period in which defendants' conduct is cognizable.

Claims under the NYCHRL are subject to a three-year limitations period, such that they are timely only if filed within three years of the discriminatory act. N.Y.C. Admin. Code

§ 8-502(d); *Eckhart*, 2021 WL 4124616, at *13.[13] Here, Matima filed her initial Summons on October 10, 2025. Dkt. 1-4 at 2. As a result, acts pled to have occurred on or after October 10, 2022 are a basis for a timely claim.

The individual defendants argue that the limitations period should instead be treated as running from January 29, 2026, the date the summonses were issued for Adjamian and Fayad following the filing of the FAC, on the ground that Matima's state pleadings had not set out the facts supporting her sexual harassment claim. Adjamian Mem. at 15; Fayad Mem. at 9. That is legally wrong. Matima permissibly filed this case in state court. And under the New York Civil Practice Law and Rules, the statute-of-limitations clock stops running when a "claim is interposed," N.Y.C.P.L.R. ("CPLR") § 203(a), which occurs when an "action is commenced." *Id.* § 203(c). An action, in turn, may be commenced by filing a "summons and complaint *or* summons with notice." *Id.* § 304(a) (emphasis added); *see also Micro-Spy, Inc. v. Small*, 9 A.D.3d 122, 125–26 (2d Dep't 2004) ("[T]he instant action was timely commenced by filing of the summons with notice within the applicable three-year state of limitations."); *Quatro Consulting Grp., LLC v. Buffalo Hotel Supply Co.*, 49 N.Y.S. 3d 252, 255 (Sup. Ct. Erie Cnty. 2017); *Jones v. Bill*, 10 N.Y.3d 550, 553–54 (2008); *Lutzker v. Novo Nordisk Pharmaceuticals, Inc.*, No. 07 Civ. 3272, 2008 WL 905040, at *3 (E.D.N.Y. 2008). And a summons with notice is adequate so long as the notice "stat[es] the nature of the action and the relief sought, and, except

---

[13] Unlike in connection with a Title VII claim, *see* 42 U.S.C. § 2000e–5(e), a plaintiff need not file an administrative complaint with the EEOC or a parallel state agency before bringing a claim under the NYCHRL, whether for harassment or retaliation. *Nunez v. New York State Dep't of Corr. Cmty. Supervision*, No. 14 Civ. 6647, 2015 WL 4605684, at *7 (S.D.N.Y. July 31, 2015), *aff'd sub nom. Nunez v. Lima*, 762 F. App'x 65 (2d Cir. 2019) (summary order); *Medina v. Waste Connections of N.Y., Inc.*, No. 19 Civ. 291, 2019 WL 3532048, at *8 (S.D.N.Y. Aug. 2, 2019) ("NYCHRL retaliation claim[s] . . . [are] not subject to an exhaustion requirement.").

in an action for medical malpractice, the sum of money for which judgment may be taken in case of default." CPLR § 305(b). Matima's summons with notice did so.[14]

Defendants fault Matima for not including in it "factual allegations establishing the basis for her sexual harassment claims." Adjamian Mem. at 8; Fayad Mem. at 8, Reply at 5. But New York law does not require that. The "naming of actual claims is sufficient to describe the nature of the action." *Razinski v. Katten Muchin Rosenman, L.L.P.*, No. 150326, 2019 WL 6134135, at *4 (N.Y. Sup. Ct. Nov. 19, 2019). By identifying "sexual harassment" as a cause of action, Matima satisfied the limited relevant state-court pleading requirement. *See, e.g.*, *Pilla v. La Flor De Mayo Express*, 191 A.D.2d 224, 224 (1st Dep't 1993) ("While the words 'personal injury' may not apprise the defendants of the precise legal theory behind plaintiff's case, they adequately apprise defendants of the 'nature of the action' at this stage of litigation."); *Connolly v. Napoli, Kaiser & Bern, LLP*, 817 NY.S.2d 872, 879 (Sup. Ct. 2006) (the phrase "breach of contract" without more is enough to "adequately apprise defendants of the nature of the action" (internal citation omitted)); *DiFillippo v. Special Metals Corp.*, 299 FR.D. 348, 355 (N.D.N.Y. 2014) ("Defendants were sufficiently apprised of the nature of this action" where the "summons with notice provided Defendant [] with the general nature of this action, *i.e.*, "employment discrimination and retaliation"). Defendants were at liberty to remove this case, but they cannot leverage that removal to hold Matima's state-court pleading to a federal-court pleading standard, or to shift the start of the limitations period to the date when Matima, per this Court's order, filed an amended complaint consistent with federal-court pleading requirements. Defendants'

[14] It identified the nature of the action ("sexual harassment, hostile work environment, and disparate treatment gender discrimination"), the relief sought ("money damages, injunctive and declaratory relief"), and the sum for which judgment could be taken in the event of default ($500,000). *See* Summons at 2–3.

contrary suggestion is at odds with the tenet that, "in diversity cases, state statutes of limitations govern the timeliness of state law claims, and state law determines the related questions of what events serve to commence an action and to toll the statute of limitations." *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) (citation omitted); *Brady v. IGS Realty Co.*, No. 20 Civ. 3512, 2021 WL 4302737, at *2 (2d Cir. Sep. 22, 2021) ("When plaintiffs bring state-law claims in federal court, 'the timeliness of those claims is also a matter of state law.'") (quoting *Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 136 (2d Cir. 2021)); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–53 (1980) ("Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations."). Matima's sexual harassment claim thus dates to October 10, 2022.[15]

A separate methodological question is presented by Matima's argument that the continuing violation doctrine applies to her sexual harassment claim, so to allow the Court to take into account Adjamian's actions in late August 2022, when the bulk of his alleged sexual harassment occurred. *See* FAC ¶¶ 18–27. It was then that Adjamian allegedly (1) "ogl[ed]" Matima, asked her to sit with him at lunch, questioned whether she "always wear[s] dresses," and remarked, "I bet your boyfriend likes you in dresses. Do you have one?," *id.* ¶¶ 20–21; (2) the next day, knocked on her hotel room door, *id.* ¶ 22; and (3) the next day, asked her how she slept the previous night and stated that she "should have let [him] in," *id.* ¶ 24. Matima alleges that Adjamian's conduct spanning before and after October 10, 2022, constitutes a continuing

---

[15] The Amended Summons's correction of ByteDance's corporate name does not alter this date. The initial misnomer was nonsubstantive and "could not possibly have misled the defendant concerning who it was that the plaintiff was in fact seeking to sue." *Duncan v. Emerald Expositions, LLC*, 186 A.D.3d 1321, 1322 (2nd Dep't 2020) (internal citation omitted); *see also* N.Y.C.P.L.R. ("CPLR") § 305(c) ("At any time, in its discretion and upon such terms as it deems just, the court may allow any summons . . . to be amended, if a substantial right of a party against whom the summons issued is not prejudiced.").

rather than a discrete violation of the NYCHRL, making it proper to consider his pre–October 10 actions in determining the plausibility of her claim. *Id.* ¶ 90.

Matima is correct. The continuing violation doctrine is available in connection with hostile work environment claims. It applies where "all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Drew v. Plaza Const. Corp.*, 688 F. Supp. 2d 270, 279 (S.D.N.Y. 2010) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)). It extends the limitations period for discriminatory acts even where some, "standing alone, would have been barred by the statute of limitations." *Eckhart*, 2021 WL 4124616, at *13 (internal citation omitted). "To qualify as a series of related acts, the events . . . must not be isolated and sporadic outbreaks of discrimination, but a dogged pattern," *Nicholas v. Nynex*, 974 F. Supp. 261, 267 (S.D.N.Y. 1997) (quoting *Sunshine v. Long Island Univ.*, 862 F. Supp. 26, 29 (E.D.N.Y. 1994)), "that is part of the same course of harassing conduct," *Olivieri*, 112 F.4th at 88. The doctrine "does not permit a litigant to pursue claims based on conduct . . . by citing later dissimilar acts." *Montanus*, 2025 WL 2503326, at *5–6.

Here, the FAC alleges two acts, within the limitations period, that plausibly continue the course of sexual harassment from August 2022. First, in late October 2022, Adjamian suggested to Matima that if she did not want to spend time away from closing sales, she should "make other arrangements" with him as he does "with the other girls" and told her to "[s]top being such a prude." FAC ¶ 26. He continued, "Can't you see, your life would be so much easier if you would give me what I want?" *Id.* Second, on November 28, 2022, Adjamian called Matima "after work hours," said that "he was aware that she had been approved for a transfer to another internal position," and warned Matima that she "better . . . stop playing hard to get or else I will

have to give you a bad report." *Id.* ¶ 27. Adjamian's statements on these occasions are plausibly read to refer back to his importuning of Matima for sex during the August 2022 business trip. As such, they are not "dissimilar acts." *Montanus*, 2025 WL 2503326, at *6. To the contrary, his statements not only implicitly referred to his earlier sexual pursuit of her, but escalated it, by introducing a veiled threat of reprisal, that if she did not "giv[e] [him] what [he] want[ed]," he would give her a "bad report." *Id.* ¶ 26–27.

Viewing the totality of the facts alleged, Adjamian's August advances and the October and November veiled threats are "related incidents of discrimination," *Eckhart*, 2021 WL 4124616, at *14, that form "part of the same course of harassing conduct," *Olivieri*, 112 F.4th at 88. They are thus "part of the same unlawful employment practice." *Drew*, 688 F. Supp. at 279. The otherwise time-barred August conduct is accordingly properly considered under the continuing violation theory. *See, e.g.*, *Eckhart*, 2021 WL 4124616, at *13–15 (denying motion to dismiss NYCHRL claims as untimely where timely acts of harassment formed a continuing course of actionable conduct with earlier harassment); *Canosa v. Ziff*, No. 18 Civ. 4155, 2019 WL 498864, at *18 (S.D.N.Y. Jan. 28, 2019) (same); *Arazi*, 2022 WL 912940, at *14–15 (same).

**2. Plausibility of the FAC's Claim**

Viewing its allegations in totality, the FAC plausibly alleges that Adjamian treated his ByteDance subordinate Matima less well because of her gender, as required for liability under the NYCHRL. *Mihalik*, 715 F.3d at 110.

As pled, Adjamian's conduct towards Matima progressed from unwanted sexualized attention, to expressions of sexual interest, to sexual propositions, and ultimately, to veiled threats of adverse professional consequences if Matima continued to reject his advances. *See* FAC ¶¶ 18–27. This behavior tracks that cited in cases sustaining such claims under the

NYHCRL, including Adjamian's ogling and commenting on Matima's appearance, *see, e.g.*, *Diaz-Roa*, 757 F. Supp. 3d at 518, commenting on her attire, *see, e.g.*, *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 289–90 (S.D.N.Y. 2016), and asking about her relationship status and propositioning her, including outside her hotel room late at night, *see, e.g.*, *Johnson*, 657 F. Supp. 3d at 543, 555. These allegations are also sufficiently "gender-charged" to support the required inference of discriminatory motivation. *See, e.g.*, *Mihalik*, 715 F.3d at 113–15; *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 416 (S.D.N.Y. 2017) (supervisor's "remarks about Plaintiff's appearance and using her femininity to successfully carry out certain job responsibilities, create[] a minimal inference that Plaintiff was subject to differential treatment on the basis of her gender"); *Carter v. Verizon*, No. 13 Civ. 7579, 2015 WL 247344, at *9–12 (S.D.N.Y. Jan. 20, 2015) (supervisor's placing hands on employee's shoulders fairly construed as "gender charged"). Indeed, at the pleading stage, an explicit or implicit sexual proposal by a man to a woman or vice-versa creates a "presumption that the conduct occurred because of gender differences." *Johnson*, 657 F. Supp. 3d at 55 (quoting *Nachmany v. FXCM, Inc.*, No. 16 Civ. 225, 2020 WL 178413, at *5 (S.D.N.Y. Jan. 9, 2020).

To be sure, the FAC lacks some allegations commonly noted in decisions upholding such NYCHRL claims. It does not claim that Adjamian sent Matima sexually explicit images, *see, e.g.*, *McHenry*, 510 F. Supp. 3d at 69–70 (text messages); engaged in repetitive or long-lasting behavior towards her, *see, e.g.*, *Mitura*, 712 F. Supp. 3d at 450 ("dozens if not hundreds of disparaging" communications on a "weekly basis"); or made physical contact with her, *see, e.g.*, *Girardi*, 2023 WL 2744027, at *1 (touched plaintiff's hair and rubbed her ears and shoulders), let alone a combination of these, *Baldwin v. TMPL Lexington LLC*, No. 23 Civ. 9899, 2024 WL 3862150, at *6 (S.D.N.Y. 2024) (plaintiff was "groped" against her will for months and

"repeatedly" asked out). But the NYCHRL does not require those specifics. And, depending on the facts pled, the requirement that the plaintiff have been "treated less well than other employees because of her gender," *Mitura*, 712 F. Supp. 3d at 453 (quoting *McHenry*, 510 F. Supp. 3d at 66), can be met by "[a] single comment." *Id.* at 461; *see also Shukla v. Deloitte Consulting LLP*, No. 19 Civ. 10578, 2020 WL 3181785, at *11 (S.D.N.Y. June 15, 2020). Here, the FAC alleges considerably more: a series of unwanted advances and threats. Taken as true, those allegations plausibly state a claim for sexual harassment under the NYCHRL.

The FAC also alleges the "sexualized content required to constitute sexual harassment under the EFAA." *Montanus*, 2025 WL 2503326, at *7. That distinction matters because the EFAA, by its terms, does not reach claims of gender discrimination, but only claims of sexual harassment, a particular form of gender discrimination involving unwanted, gender-based verbal or physical contact. *See* 9 U.S.C. § 401(4); *Lane*, 2026 WL 2364630, at *6 (sexual harassment is a subcategory of gender-based discrimination requiring more "than simply alleging that a plaintiff was 'treated less well than other employees because of [] gender'" (internal citation omitted)); *Toomey*, 2026 WL 458244, at *4 ("[T]he EFAA exempts claims relating to sexual harassment and sexual assault, only."); *Smith*, 2025 WL 2782484, at *8 ("[R]egardless of the source of law, sexual harassment must be sexual in nature."). Here, the FAC's allegations go well beyond mere differential treatment on account of gender to centrally include sexualized attention, a proposition for sex, and a veiled threat of reprisal following the denial of sex, *i.e.*, continuing to play "hard to get." FAC ¶ 27. Those allegations are ample to bring this case within the EFAA. *See, e.g.*, *Johnson*, 657 F. Supp. 3d at 554–56 (sustaining invocation of EFAA where, as pled, plaintiff's supervisor made sexual advances and pressured him to have sex with colleagues, including herself); *Nunez*, 2015 WL 4605684, at *11 (sustaining NYCHRL claim

where supervisor repeatedly reached out to plaintiff to invite her to movies or plays, said he was "infatuated" with her, and warned that if she did not go on dates with him, he would force her to perform time-consuming work).

Defendants counter by attacking Matima's credibility. ByteDance terms the FAC's allegations a "complete sham," and argues that, had her account of sexual harassment been truthful, she would have included it in her internal complaints or in her EEOC Charge, none of which alleged sexual advances or a proposition for sex. Reply at 4–5. Adjamian and Fayad make a similar argument. Fayad Mem. at 22; Adjamian Mem. at 21. Those challenges to credibility, however, although appropriate at trial, are not proper at the pleading stage. *See Oakley v. Dolan*, No. 17 Civ. 6903, 2020 WL 818920, at *6 (S.D.N.Y. Feb. 19, 2020), *rev'd in part on other grounds*, 980 F.3d 279 (2d Cir. 2020) (plaintiff's "credibility and motivations in bringing suit are not relevant on a motion to dismiss"); *Whitcombe v. Lanza Corp.*, No. 20 Civ. 4835, 2022 WL 597438, at *6 (February 28, 2022) ("[T]he Court cannot—and will not—wade into fact and credibility determinations on a motion to dismiss."); *Tescher v. Experian Information Solutions, Inc.*, No. 21 Civ. 2266, 2022 WL 564048, at *4 (S.D.N.Y. Feb. 23, 2022) (same). And a plaintiff is not barred from alleging facts in a complaint merely because she did not previously report them in an internal workplace complaint or administrative charge. *Yost*, 657 F.Supp.3d at 568. The Court's charter at this stage is merely to determine whether the factual allegations in the FAC, taken as true, plausibly state a claim. *DiFolco*, 622 F.3d at 113 ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

Matima therefore has pled a viable claim of sexual harassment under the NYCHRL.

### C. Implications for the Motions to Compel Arbitration

In light of this ruling, the EFAA applies to this case. And for the reasons reviewed in *Johnson*, as a matter of statutory construction of the EFAA, that makes Matima's arbitration agreement unenforceable as to any of the claims in this case. *See, e.g.*, *Olivieri*, 112 F.4th at 91–93 (affirming denial of motion to compel arbitration in its entirety where EFAA applied to a sexual harassment claim); *Delo*, 685 F. Supp. 3d at 185 (denying motion to compel arbitration in its entirety under EFAA, where complaint plausibly alleged a sexual harassment claim; *Baldwin*, 2024 WL 3862150, at *7–9 (same); *Mitura*, 712 F. Supp. 3d at 455 (same); *Diaz-Roa*, 757 F. Supp. 3d at 532, 554–59 (same); *Zeng*, 2024 WL 4451605, at *6–7 (same); *Puris*, 2025 WL 343905, at *5–6 (same); *Johnson*, 657 F. Supp. 3d at 558–61 (same).

Fayad argues that the claims against him nevertheless must be arbitrated, because the FAC, although bringing a sexual harassment claim against ByteDance and Adjamian, does not bring such a claim against him. Fayad Mem. at 16. But his argument that the EFAA "applies on a party-specific basis," *id.* at 17, is foreclosed by the text of EFAA, as reviewed in *Johnson*. There, this Court, drawing on the EFAA's use of the word "case," held that once "the EFAA applies to a sexual harassment claim," the "EFAA blocks arbitration as to the entire case." *Johnson*, 657 F. Supp. 3d at 558. And *Lambert v. New Start Cap. LLC*, 799 F. Supp. 3d 258, 282–86 (S.D.N.Y. 2025), on which Fayad relies, addresses a different issue. Judge Woods there addressed whether the word "case" in the EFAA applies only to the "case" brought by the plaintiff alleging the sexual harassment dispute, or also to the claims brought by other plaintiffs who did not bring such claims. *Id.* at 282. It held that a plaintiff who did not bring such a claim could not invoke a different plaintiff's sexual harassment claim to "nullify her arbitration agreement." *Id.* That situation is not presented here, where there is only one plaintiff, and the

case she has brought includes a plausibly pled claim within the EFAA's scope. Indeed, *Lambert* itself recognized the widespread case law holding "that 'if the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to' the plaintiff's 'entire case.'" *Id.* at 281 (quoting *Diaz-Roa*, 757 F. Supp. 3d at 532); *see also Delo*, 685 F. Supp. 3d at 189 ("[W]here a dispute presents multiple claims—some related to sexual harassment, others not—the EFAA blocks arbitration of the entire case, not just the sexual harassment claims."); *Baldwin*, 2024 WL 3862150, at *7 (EFAA renders the arbitration agreement unenforceable as to "*the entire case*" (emphasis in original)); *Clay v. FGO Logistics*, 751 F. Supp. 3d 3, 20 (D. Conn. 2024) ("As long as the claims and parties are properly joined . . . when a claim against one party is covered by the EFAA, the entire case cannot be arbitrated if the plaintiff so elects."); *Mochanoff v. SOLV Energy*, No. 23 Civ. 653, 2024 WL 899384, at *4–5 (S.D. Cal. Mar. 1, 2024) ("[T]he EFAA bars enforcement of the arbitration agreement . . . as to all claims in this case, and as to all Defendants in this case.").

The Court accordingly denies the motions to compel arbitration.

## III. Other Issues

### A. The Pending Motions to Dismiss

As noted, the individual defendants have moved under Rule 12(b)(6) to dismiss certain claims, with Adjamian moving to dismiss the NYSHRL and NYCHRL sexual harassment claims against him and Fayad moving to dismiss the retaliation claims against him to the extent these allege retaliation for a sexual harassment complaint by Matima. Adjamian Mem. at 13–17; Fayad Mem. at 13–15.

The Court's finding above—in connection with its application of the EFAA—that the FAC plausibly pleads a NYCHRL sexual harassment claim necessarily disposes of Adjamian's motion to dismiss that claim.

As to the remaining motions to dismiss, however, the parties have not completed briefing, the Court having suspended briefing in deference to the pending motion to compel arbitration. Dkt. 44. The Court will not resolve the motions until they have been fully briefed. Matima's opposition to those motions is due two weeks from the date of this decision. Defendants' replies are due one week thereafter.[16]

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motions to compel arbitration. The Court directs the Clerk of Court to terminate the motion pending at docket number 9.

The Court also denies Adjamian's motion to dismiss the claim of sexual harassment under the NYCHRL. Defendants' motions to dismiss otherwise remain pending. The dates for the remaining briefs on that motion are as set forth above.

[16] In the course of addressing the availability of the EFAA, some of the parties did brief the plausibility of the FAC's retaliation claims based on a report of sexual harassment, insofar as those claims independently had the capacity to implicate the EFAA. ByteDance and Fayad argue that the FAC does not allege that Matima ever reported or complained about sexual harassment while at ByteDance, and that this bars the retaliation claims. *See* Fayad Mem. at 16–17; Opposition at 2; Reply at 9–10. The Court has not reached that issue, in light of its holding that the NYCHRL sexual harassment claim triggered the EFAA. The parties are at liberty to rely on their existing briefing on the plausibility of the retaliation claims in lieu of submitting new briefs on that point.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 11, 2026
New York, New York